## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTINE HIRSCH,

    *Plaintiff,*

v.

COGNIZANT TECHNOLOGY
SOLUTIONS U.S. CORP.,

    *Defendant.*

No. 21 C 161

Judge Lindsay C. Jenkins

### MEMORANDUM OPINION AND ORDER

In a suit against her former employer, Plaintiff Christine Hirsch ("Hirsch") alleges age-based discrimination and retaliation under the Illinois Human Rights Act ("IHRA") against Defendant Cognizant Technology Solutions U.S. Corp. ("Cognizant"). [Dkt. No. 1.] Cognizant removed the matter from state court. [*Id.*] Before the Court is the Cognizant's summary judgment motion. [Dkt. No. 34.] For the reasons stated below, the Court grants Cognizant's motion. A final judgment consistent with Federal Rule of Civil Procedure 58 will enter in favor of Defendant and against Plaintiff. Civil case terminated.

## I.    Factual Background[1]

Hirsch has worked as a recruiter for the past forty years at multiple companies. [Dkt. No. 1-1 at ¶¶ 1, 14.] Cognizant is a "multi-national consulting corporation." [*Id.*]

---

[1] The following facts are undisputed, unless otherwise noted. The Court views the facts in the light most favorable to Hirsch as the non-moving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002).

In August of 2014, Cognizant hired Hirsch as an independent contractor for the position of contract recruiter. [Dkt. No. 42 at ¶ 4.] Almost two years later, on June 7, 2016, Cognizant hired Hirsch as a full-time employee in the position of Senior Manager for Executive Recruitment for Cognizant's Talent Acquisition Group ("TAG"). [*Id.* at ¶ 5.] At the time, Hirsch was sixty-two years old. [*Id.* at ¶ 6.] Hirsch's immediate supervisor was Bradley Maury. [*Id.* at ¶ 9.]

For the first three years of her tenure at Cognizant, Hirsch's work performance varied. Hirsch's performance exceeded most expectations in 2016, met all expectations in 2017, and again exceeded most expectations in 2018 and 2019. [*Id.* at ¶ 10.] From at least 2016 to 2019, Hirsch's pay remained roughly the same, with a base salary of $135,000 and an annual discretionary bonus of up to $25,000. [Dkt. No. 42 at ¶ 7; Dkt. No. 36-3 at 24.]

Cognizant promotes employees each "promotion year" or "cycle" based on certain promotion criteria. [Dkt. No. 42 at ¶ 36.] Cognizant employees are ineligible for a promotion unless they receive two positive year-end performance reviews, thereby necessitating at least two years of full-time work. [*Id.*] Hirsch, who began her full-time employment in 2016, was not eligible for a promotion to Associate Director until the 2018 promotional cycle. [*Id.*] In general, Cognizant only awarded "out-of-cycle promotions" in "exceptional circumstances." [*Id.* at ¶¶ 37, 39.]

Cognizant employees could apply to internal postings for "roles" or "positions." [Dkt. No. 42 at ¶¶ 45–46; Dkt. No. 45 at ¶ 5.] While there was no formalized

application process during most of Hirsch's employment,[2] an employee could inform her supervisor of her interest in a position—termed "raising one's hand"—and the supervisor would inform his or her superior of the employee's interest in a position. [Dkt. No. 42 at ¶ 46; Dkt. No. 43-1 at 195–96; Dkt. No. 45 at ¶ 5.]

Hirsch alleges that during her tenure at Cognizant, Cognizant repeatedly "overlooked" her for a variety of positions. [Dkt. No. 1-1 at ¶ 23]. According to the complaint, Hirsch identifies eleven positions where she was either passed over or otherwise not selected despite "raising her hand" to express interest.[3] [Dkt. No. 1-1 at ¶ 23; Dkt. No. 45 at ¶ 5.] Hirsch expressed interest in many of the identified roles more than once when openings occurred, resulting in a total of nineteen instances where someone other than Hirsch was awarded the position. [Dkt. No. 1-1 at ¶ 23.]

Specifically, Hirsch's complaint alleges five instances where she expressed interest in the position of "BFS Consulting Recruiting Team Lead Associate Director" [Dkt. No. 1-1 at ¶ 23] or "Banking and Financial Services Consulting Recruiting Lead." [Dkt. No. 42 at ¶ 43].[4] Hirsch contends that when the position was initially open in August of 2014, she "raised her hand" to express interest. [*Id.*] Adam Udell, a forty-seven-year-old external hire, filled the role in December of 2014 at the

---

[2] Cognizant implemented an internal Rotation Guide and later a Job Moves Program after Hirsch's resignation. [Dkt. No. 42 at ¶ 45.]

[3] The parties disagree on whether the "job openings" Hirsch identifies are positions that Hirsch could have been promoted to or were merely roles or role-based assignments that were additional responsibility without any accompanying increase in pay or title. *Compare* [Dkt. No. 35 at 7–8] *with* [Dkt. No. 41 at 6–7]. The Court addresses this dispute below.

[4] The titles Hirsch uses in her Complaint differ slightly from the titles contained in Cognizant's 56.1 Statement of Facts. *See generally* [Dkt. No. 1 at ¶ 23; Dkt. No. 42 at ¶ 43.] The Court denotes both when applicable.

Associate Director level.[5] [*Id.*] When Udell left the role in June of 2016, Maury, Hirsch's then-supervisor, filled the role.[6] [*Id.*] The BFS Consulting Recruiting Lead role became available again in June of 2019. [*Id.*] Cognizant maintains that because the candidate had to be on the East Coast and Hirsch was in Chicago, Cognizant did not select her for the role. [*Id.*]

In October of 2015, Hirsch expressed interest to Maury for the role of "EAS Recruiting Lead Associate Director" [Dkt. No. 1-1 at ¶ 23] or "EAS Recruiting Lead" [Dkt. No. 42 at ¶ 43]. Cognizant chose Eric Skoien, who was approximately forty to fifty years old at the time, for the role. [Dkt. No. 42 at ¶ 43.] Cognizant contends that Skoien had more applicable experience in "horizontal ES recruiting than others considered." [*Id.*]

In September of 2016, Sunny Collier and Paul Jesselson filled the role of Executive Recruiter.[7] [Dkt. No. 1-1 at ¶ 23; Dkt. No. 42 at ¶ 43.] In September of 2016

---

[5]      As discussed at length below, many of the dates listed in paragraph 23 of the Complaint are not born out by the record evidence. As to the BFS Consulting Recruiting Team Lead Associate Director position, Hirsch testified at her deposition that she applied for the role in August 2014 and Adam Udell filled that role in December 2014. [Dkt. No. 43-1 at 114–15.] There is no record evidence that Hirsch applied for this role in December 2014.

[6]      Hirsch's complaint alleges that she applied for the role of BFS Consulting Recruiting Team Lead Associate Director for a third time in January of 2018. [Dkt. No. 1 at ¶ 23.] In her Statement of Additional Facts, Hirsch incorporates her complaint by reference but does not cite any record evidence of her applying to this position in January of 2018 specifically. [Dkt. No. 45 at ¶ 5.] Citation to the pleadings alone is insufficient at the summary judgment stage. *See* Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (holding that the nonmovant, in opposing a summary judgment motion, must "set forth specific facts showing that there is a genuine issue for trial" which includes more than merely pleadings).

[7]      While Hirsch alleges that she "expressed interest in" this role, [Dkt. No. 42 at ¶ 43], she cites to Maury's testimony that she "may have shown interest" in the role but cannot say definitively as much. [Dkt. No. 43-1 at 55.]

and December of 2017, when the role of "Director Recruitment" became available, someone else filled the position. [Dkt. No. 1-1 at ¶ 23; Dkt. No. 42 at ¶ 43.]

In June of 2017, Hirsch expressed interest "Digital Operations Consulting Recruiting Lead Associate Director" [Dkt. No. 1-1 at ¶ 23] or "Digital Operations Consulting Recruiting Lead." [Dkt. No. 42 at ¶ 43.] In October of 2017, Cognizant chose Skoien for the role, who Cognizant claims had "superior qualifications" for the role.[8] [*Id.* at ¶ 43.] That same month (June 2017), Hirsch completed an "executive search" for the role of Recruiting Diversity and Inclusion Center of Excellence Lead Director and Recruiting Diversity and Inclusion Lead Associate Director. [Dkt. No. 1-1 at ¶ 23; Dkt. No. 42 at ¶ 43.] Hirsch expressed interest in the Recruiting Diversity and Inclusion Center of Excellence Lead Associate Director position, but was told she would not be considered. [Dkt. No. 42 at ¶ 43.] The role was not filled until March 2019, when Sonya McLaughlin took it over.[9] [*Id.*]

In September of 2017, Hirsch alleges that she expressed interest in the role of "Corporate Functions Recruiting Lead Associate Director" [Dkt. No. 1-1 at ¶ 23] or "Corporate Functions Recruiting Lead" [Dkt. No. 42 at ¶ 43].[10] Sonya McLaughlin

---

[8]     While Hirsch alleges that she applied for this role in June and October 2017, [Dkt. No. 1-1 at ¶ 23], in her deposition, Hirsch testifies that she applied for the role in June 2017 and Eric Skoien filled it in October 2017. [Dkt. No. 43-1 at 116–17.] The state of record is that Hirsch applied to the role in June 2017, not October 2017.

[9]     Hirsch alleges that she applied for the role of Recruiting Diversity and Inclusion Center of Excellence Lead Associate Director in June 2017 and March 2019. [Dkt. No. 1 at ¶ 23.] In her deposition, Hirsch testified that she applied for the role in June 2017, it went unfilled for years, and Sonya McLaughlin was later given this role in 2019. [Dkt. No. 42 at ¶ 43; Hirsch Dep. at 220–22.] Given the state of the record, it appears that Hirsch applied for this role only in June 2017.

[10]     The Court notes that Hirsch additionally alleges that another role for "Corporate Functions Recruiting Lead Associate Director" came open in October of 2017 that was filled by Eric Skoien. [Dkt. No. 1 at ¶ 23; Dkt. No. 43-1 at 59.] Neither party discusses this role in its statement of facts. *See generally* [Dkt. No. 42; Dkt. No. 45.] As such, the Court must conclude that neither party is pursuing this instance of failure-to-promote and does not discuss it further.

was chosen, who was approximately fifty-five to sixty years old, had twenty-five years of experience, and had already performed the role for two years. [*Id.*] Finally, in March of 2019, Lavonne Moon filled the role of "Senior Executive Recruiter Director" [Dkt. No. 1-1 at ¶ 23] or "Senior Executive Recruiter," even though Hirsch "was interested in this position." [Dkt. No. 42 at ¶ 43.]

Hirsch also contends that Cognizant would give her an "elevated role," only to be displaced from it by younger coworkers or removed and replaced by younger colleagues. For instance, as mentioned above, when Udell left the BFS Consulting Recruiting Lead role in June of 2016, Udell took over Hirsch's role of "ComTech Consulting Recruiting Lead" at that time. [Dkt. No. 42 at ¶ 43.] Additionally, Cognizant awarded Hirsch the role of "Digital Technology Consulting Recruiting Lead" in May of 2018 at the Senior Manager level, without a compensation or level increase. [Dkt. No. 42 at ¶ 43.] In October of 2018, an existing Associate Director, Vishwaprahba Shankaran, took over the role, thereby displacing Hirsch. [*Id.*] Cognizant argues that Shankaran was "already at the Associate Director level and was a better fit based on specific experience with this business unit." [*Id.*] Finally, after Hirsch left her role of BFS and Insurance Recruiting Lead in 2021 (discussed below), two of her coworkers, Shirley Vandever and Wendy Lynn Figueroa, took over and split these responsibilities. [Dkt. No. 42 at ¶ 47.]

Aside from these enumerated roles, Hirsch also maintains that Cognizant promoted younger colleagues to Associate Director over her. While the parties dispute how many employees Cognizant promoted from Senior Manager to Associate Director

during Hirsch's four-year tenure [Dkt. No. 42 at ¶ 40–41], they agree that Cognizant promoted Shankaran to Associate Director in 2017 [Dkt. No. 45 at ¶¶ 8–9, 17]. Hirsch additionally argues that Cognizant intentionally left her out of certain training opportunities, while other coworkers were allowed to attend. [Dkt. No. 43-1 at 121–25; Dkt. No. 45 at ¶ 13.]

In December of 2018, Hirsch made a formal complaint to Cognizant Human Resources that she was experiencing a hostile work environment. [Dkt. No. 42 at ¶¶ 48–49.] Hirsch reported that in September 2017, Shankaran had asked Hirsch's age and commented on Hirsch's husband's age, who was younger than Hirsch. [Dkt. No. 36-3 at 49; Dkt. No. 45 at ¶ 14.] While Cognizant's HR report does not reflect this, Hirsch testified that Shankaran also asked about Hirsch's age in the context of Hirsch's request for a standing desk in September of 2017. [Dkt. No. 43-1 at 91–93.] Cognizant concluded that while Hirsch's hostile work environment allegations were largely unsubstantiated, some of Hirsch's allegations did evidence "some inappropriate/unprofessional behavior." [Dkt. No. 36-3 at 52.]

In mid-2019, Cognizant assigned Hirsch to the role of Banking and Financial Services and Insurance Recruiting Lead. [Dkt. No. 42 at ¶ 44.] Hirsch states that this was a "lead role" but she "received no compensation increase or promotion." [*Id.* at ¶ 43.] On August 13, 2019, Hirsch filed a complaint with the EEOC alleging discrimination based on age and national origin and retaliation. [Dkt. No. 36-3 at 61; Dkt. No. 42 at ¶ 44.] In approximately March or April of 2020, Atish Mitra took over

7

Hirsch's team. [Dkt. No. 45 at ¶ 18.] The parties dispute whether Mitra knew or ever learned about Hirsch's EEOC complaint. [Dkt. No. 45 at ¶ 18.]

In June of 2020, Cognizant furloughed or laid off half of its recruiters due to the COVID-19 pandemic. [Dkt. No. 42 at ¶ 14.] Cognizant furloughed Hirsch and recalled her in September of 2020. [*Id.* at ¶ 15, 16.] On return from furlough, Cognizant assigned Hirsch to the BFS and Insurance Group within the Sales Hiring Program, and Matthew Richards was her new direct supervisor. [Dkt. No. 42 at ¶¶ 17–19; Dkt. No. 45 at ¶ 19.] Hirsch alleges that Richards was known as "*persona non grata*" within Cognizant, which Cognizant denies. [Dkt. No. 45 at ¶ 20.]

On November 2, 2020, Hirsch filed this lawsuit, alleging discrimination and retaliation based on age under the Illinois Human Rights Act ("IHRA") in state court, which Cognizant thereafter removed to this Court. [Dkt. No. 1.] That same month and into 2021, Hirsch received various complaints about Hirsch. In November of 2020, a Cognizant employee emailed Richards, complaining that Hirsch had "blindsided" him by extending a recruiting offer without his knowledge. [Dkt No. 36-2 at 106.] Richards then requested the details of the offer from Hirsch, who circulated them to Richards and the employee. [*Id.* at 105.] On January 21, 2021, another Cognizant employee emailed Richards to complain about Hirsch's "lack of professional approach" in a client matter. [*Id.* at 113.] Richards thereafter forwarded the employee's feedback to Mitra. [*Id.*] Mitra informed Hirsch of the complaint regarding her slow response to emails. [Dkt. No. 36-3 at 16.] Richards also received three emails from other Cognizant employees with general complaints about poor

candidate "flow" to the positions they were in charge of recruiting for in January of 2021. [Dkt. No. 42 at ¶ 22; Dkt. No. 36-3 at 2, 5, 8.] On February 5, 2021, Richards informed Maury that one of Hirsch's clients was requesting a new recruiter over Hirsch. [Dkt. No. 42 at ¶ 23.]

Meanwhile, in January of 2021, Hirsch reported to Cognizant Human Resources that Richards was making disparaging comments about her behind her back. [Dkt. No. 42 at ¶¶ 48, 50.] Cognizant argues that this report was unrelated to age discrimination, while Hirsch maintains that the report should have included Shankaran's 2017 comments about Hirsch's age. [*Id.* at ¶ 50.]

In February of 2021, Hirsch received her 2020 performance review. [Dkt. No. 42 at ¶ 10; Dkt. No. 43-1 at 111.] In contrast to her prior performance reviews, Hirsch's performance was rated a two out of four, with four being the highest rating. [Dkt. No. 42 at ¶ 10.] Maury testified that when an employee is given a two rating, the employee could receive a decreased discretionary bonus or placed on a performance improvement plan ("PIP"). [Dkt. No. 43 at 41–42.] In March of 2021, Cognizant placed Hirsch on a PIP, which Cognizant says was because of her performance issues. [Dkt. No. 45 at ¶¶ 22, 25.] On April 13, 2021, Hirsch voluntarily resigned from Cognizant. [*Id.* at ¶ 27.]

## II.    Legal Standard

The Court should grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Carroll v. Lynch*, 698 F.3d 561, 564

(7th Cir. 2012). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba*, 884 F.3d at 717. In doing so, the Court may not weigh conflicting evidence or make credibility determinations. *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). Further, the Court must give the nonmovant "the benefit of reasonable inferences from the evidence, but not speculative inferences in [her] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (citation omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## III. Analysis

### A. Age Discrimination under the IHRA

The Court first addresses Hirsch's age discrimination claim under the IHRA. Like the Age Discrimination in Employment Act ("ADEA"), the IHRA bars employers from acting "with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." 775 ILCS 5/2-102(A); *see also De v. City of Chicago*, 912 F. Supp. 2d 709, 733 (N.D. Ill.

10

2012) (noting that courts "evaluating claims of discrimination" brought under the IHRA "apply the same" methods used "by federal courts in evaluating causes of action brought pursuant to" the ADEA).

To prove age discrimination under the ADEA, the evidence, taken as a whole, must be such that a "reasonable factfinder [could] conclude that [Hirsch's age] caused [her] discharge or other adverse employment action." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see Carson v. Lake Cnty., Ind.*, 865 F.3d 526, 532–33 (7th Cir. 2017) (applying *Ortiz* to ADEA claims). While the Seventh Circuit in *Ortiz* sought to eliminate district courts' practice of distinguishing between "direct" and "indirect" evidence, *Ortiz*, 834 F.3d at 765, the *McDonnell Douglas* burden-shifting framework remains a useful method to analyze discrimination claims, *see David v. Bd. of Tr. Of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) ("[B]oth before and after *Ortiz*, *McDonnell Douglas* is a means of organizing, presenting, and assessing circumstantial evidence . . . in discrimination cases."). *See also Carson*, 865 F.3d at 532–33 (citing *Ortiz* while noting that a plaintiff alleging ADEA discrimination may still "proceed through the burden-shifting framework adapted from *McDonnell Douglas*"). Because the parties utilize this framework, the Court does the same. *See generally* [Dkt. No. 35, 41, 44.]

To establish a *prima facie* case under the *McDonnell Douglas* framework, Hirsch must show that: (1) she is a member of a protected class, (2) her job performance met Cognizant's legitimate expectations, (3) she suffered an adverse employment action, and (4) other similarly situated individuals who were not

11

members of a protected class received more favorable treatment compared to her. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Carson*, 865 F.3d at 533. If Hirsch can establish a *prima facie* case, the burden shifts to Cognizant to articulate a legitimate, non-discriminatory reason for the adverse employment actions it took, which Hirsch may then attack as pretext. *McDonnell Douglas*, 411 U.S. at 802; *Carson*, 865 F.3d at 533. Hirsch proceeds under a disparate treatment theory in her discrimination claim. "To recover under a theory of disparate treatment in the ADEA context, it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for [her] age, the adverse action would not have occurred." *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020).

The Court's analysis begins with Hirsch's *prima facie* case. Cognizant does not dispute that Hirsch belongs to a protected class (persons over the age of forty) and met Cognizant's legitimate job expectations. *See generally* [Dkt. No. 35, 44]. As such, the Court focuses on the remaining two prongs: whether Hirsch suffered an adverse employment action and whether other similarly situated individuals who were not members of a protected class received more favorable treatment. *McDonnell Douglas*, 411 U.S. at 802; *Carson*, 865 F.3d at 533.

### 1.     Adverse Employment Action

To determine whether Hirsch suffered an adverse employment action, the action must be "one that is materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities." *Atanus v. Perry*, 520 F.3d 662, 678 (7th Cir. 2008) (quoting *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir.

12

2002)). While an adverse employment action need not necessarily have a financial loss, "not everything that makes an employee unhappy is an actionable adverse action." *Id.* (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). To qualify as an adverse action, the plaintiff "must show some quantitative or qualitative change in the terms or conditions of [her] employment or some sort of real harm." *Id.* at 675 (internal quotation marks omitted).

Hirsch alleges three adverse employment actions, including that Cognizant: (1) denied her training opportunities, (2) paid her less when compared to her younger coworkers with less experience, and (3) failed to promote her at various junctures. [Dkt. No. 41 at 5–12.] The Court takes each in turn.

While "[a] discriminatory denial of job-related training can constitute an adverse employment action," *Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003), Hirsch fails to cite record evidence that she was denied any training opportunities, [Dkt. No. 41 at 10]. Rather, she simply states "Cognizant consistently offered younger employees training opportunities which permitted them to increase their skills and thus, made them more attractive for promotion" without citing any evidence to support her claim. [*Id.*] Such conclusory treatment is insufficient and, as such, the Court dismisses Hirsch's argument that she suffered an adverse employment action in the form of denial of training opportunities. *See White Eagle Co-op. Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them, and we will not address this undeveloped argument.").

Hirsch next argues that she suffered an adverse employment action because (1) she was denied promotions that she "deserved" and therefore was paid less, [Dkt. No. 1 at 25; Dkt. No. 41 at 12], and because (2) she was paid less on average than younger coworkers with less experience overall, [Dkt. No. 1 at 26–27; Dkt. No. 41 at 11]. Hirsch's first formulation is effectively part of Hirsch's failure-to-promote theory—as she must receive a promotion to be awarded a raise under her allegations—and the Court addresses that claim in the subsection below. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649, 654 (7th Cir. 2000) (noting that denial of a promotion that comes with a raise is an adverse employment action).

Hirsch's latter theory—that she was paid less on average than her comparatively younger coworkers—effectively amounts to a disparate pay claim. *See David*, 846 F.3d at 224–25 (applying the *McDonnell Douglas* framework to an ADEA and Title VII disparate pay claim); *see also Hubers v. Gannett Co., Inc.*, 2019 WL 1112259, at *5 (N.D. Ill. Mar. 11, 2019) (evaluating an IHRA sex-based discrimination claim alleging a "pay disparity" under the *McDonnell Douglas* framework). While it is not entirely clear what Hirsch's *prima facie* case would be under an IHRA claim for disparate pay, *see David*, 846 F.3d at 225 (acknowledging that it is "somewhat unclear what standard" guides the determination), it seems unlikely that Hirsch would be successful given the lack of suitable comparator.

The only suitable comparator Hirsch proposes is one unidentified "48-year-old female employee" who was a senior manager in Florida who received a slightly higher pay increase in 2019. [Dkt. No. 41 at 11.] This falls far short of the required

comparator information. Ordinarily, a plaintiff must show that the comparators held the same job description, dealt with the same supervisor, were subject to the same standards, and had comparable experience, education, and other qualifications. *See David*, 846 F.3d at 226; *see also Skiba*, 884 F.3d at 723. Hirsch has provided none of this information for the proposed comparator, and such a deficiency means that her theory of liability fails. *Skiba*, 884 F.3d at 723 (holding that plaintiff's table "listing the names and ages of the thirty-seven younger employees and the positions for which they were hired . . . provides no amplifying detail of the employees' qualifications or employment history," such that the court had no basis to conclude that hiring was the result of discriminatory motive).

### 2.    Failure to Promote

Failure to promote an employee can be an adverse employment action under the ADEA. *See Tyburski*, 964 F.3d at 598; *see also Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). To establish a *prima facie* case in the failure-to-promote context, Hirsch must show that (1) she "belongs to the protected class," (2) she "applied for and was qualified for the position sought," (3) she "was rejected for that position," and (4) "the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." *Grayson*, 317 F.3d at 748. While the parties agree that Hirsch was over the age of forty and therefore, belonged to a protected class, they dispute the latter three requirements in a myriad of ways. *See generally* [Dkt. No. 35, 41, 44.]

A failure to promote is generally only "materially adverse" if "the position for which the plaintiff was rejected offered markedly greater compensation, responsibilities, or title." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892–93 (7th Cir. 2016). As detailed above, Hirsch's complaint identifies nineteen instances where she claimed she was "overlooked" for a position for which she was "qualified and more deserving than younger, less qualified employees [who] were awarded the positions." [Dkt. 1-1 ¶ 23]. The parties dispute whether the named "titles" in Hirsch's complaint are positions to which Hirsch could have been promoted or were merely roles or role-based assignments, some of which could have led to a promotion. Hirsch alleges that each of the titles she has identified would have offered additional "duties and responsibilities" or increased "title" with a corresponding increase in compensation. *Id.*; [Dkt. No. 41 at 8–10.] Regardless of the characterization, the Court focuses on the applicable standard for each one: "[a]n adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

For multiple, overlapping reasons, only four of the positions Hirsch identifies amount to an adverse action. For several of them, the positions were already filled on the dates Hirsch identifies. Other times, Hirsch identifies an open position, but has not come forward with evidence that she actually applied or "raised her hand" for the position. Finally, to the extent Hirsch alleges she was displaced or replaced for a position, she has failed to establish that the displacement constitutes an adverse employment action.

16

First, at least fifteen of the dates identified in paragraph 23 of Hirsch's Complaint are at odds with Hirsch's own deposition testimony.[11] At various points, Hirsch testified that a particular date represented when a position had been *filled*, not when the position was open or available. *See, e.g.*, [Dkt. No. 43-1 at 113 (Hirsch testifying that Udell "filled [the position of BFS Consulting Recruiting Lead] in 2014 . . . in December"); *id.* at 116 (Hirsch testifying that while she "applied and asked for" the position of "Digital Operations Consulting Recruiting Lead Associate Director" in June 2017, "in October Eric Skoien filled it"); *id.* at 118–20 (Hirsch testifying that although she was placed in the role of "Digital Technology Consulting Recruiting Lead" at a Senior Manager level in May of 2018, Shankaran was placed into the role in "October of 2018"); (Hirsch testifying that she applied for the role of "Recruiting Diversity & Inclusion, Center of Excellence, Lead Director" in "June of 2017" but "in March of 2019 [Cognizant] filled it with Sonya McLaughlin"); i*d*. at 220–22]. Simply put, Hirsch cannot make out a separate claim of a failure-to-promote for those instances.

Similarly, for many of the listed dates, Hirsch fails to establish that she "properly applied for the position." *See Hill*, 625 F.3d at 1003. For some roles, Hirsch implies that she should have been considered, like for the BFS Consulting Recruiting Lead role in both June of 2016 and February of 2019, or more generally for a promotion to Associate Director over Shankaran in 2017, but she fails to allege that

---

[11]    In response to Cognizant's 56.1 Statement of Facts, Hirsch cites to pages of her deposition transcript that were not included in her submissions to the Court.  [Dkt. No. 42 at ¶43.]

she applied for or "expressed interest in" the role at that time. [Dkt. No. 41 at 9–10; Dkt. No. 42 at ¶ 43; Dkt. No. 45 at ¶ 5–6.] In two instances, for the roles of Executive Recruiter and Senior Executive Recruiter, Hirsch identifies who eventually filled the position but cites to no record evidence that she ever applied or "raised her hand." [Dkt. No. 1-1 at ¶ 23; Dkt. No. 42 at ¶ 43.] For yet another position, the role of Corporate Functions Recruiting Lead, Hirsch concededly applied too late, after the position was already filled. [Dkt. No. 36-3 at 28; Dkt. No. 42 at ¶ 43.] Given this lack of record evidence, the Court will not consider those instances where Hirsch did not apply for an open position. *Grayson*, 317 F.3d at 748.

Equally as problematic, Hirsch's brief repeatedly cites to inapplicable deposition testimony regarding several of the identified roles, or she conflates one position with another. For instance, Hirsch alleges that she applied for the role of Director Recruitment in September of 2016 and December of 2017, but cites to deposition testimony regarding the Executive Recruiter position. [Dkt. No. 42 at ¶ 43.] Elsewhere, Hirsch alleges that she applied for the role of Recruiting Diversity and Inclusion Lead Associate Director but cites to deposition testimony regarding the position of Recruiting Diversity and Inclusion Center of Excellence Lead Director. [*Id.*] In such instances, the Court accepts Cognizant's contention that Hirsch did not apply for either role as undisputed and dispositive. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

18

Finally, as to the positions that Hirsch alleges she was displaced from or replaced entirely, none of the alleged instances of displacement constitutes an adverse employment action. For example, Hirsch alleges that Udell took over Hirsch's role as ComTech Consulting Recruiting Lead in June of 2016 and Shankaran took over her role as Digital Technology Consulting Recruiting Lead in May of 2018. [Dkt. No. 42 at ¶ 43.] Hirsch argues that these stand as examples that she was working at "a high level—one which [Cognizant] would not grant her." [Dkt. No. 41 at 9.] The Court disagrees. While these instances may qualify as "change[s] in [Hirsch's] job responsibilities," *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004), Hirsch does not allege that these role changes changed her "current wealth, . . . career prospects, or changes to work conditions." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). Based on the record, Hirsch continued in her position with no apparent change to her position. *See also Ribando v. United* Airlines, 200 F.3d 507, 510 (7th Cir. 1999) (defining materially adverse as including "*significantly diminished* material responsibilities" (emphasis added)).

In another instance, Hirsch alleges that Shirley Vandever and Wendy Lynn Figueroa took over her former role and split the duties among them. [Dkt. No. 42 at ¶ 47.] Hirsch argues that this is "a patent example of Hirsch being passed over in favor of a younger less qualified person doing the exact same work." [Dkt. No. 41 at 9.] Hirsch's allegations fail for much the same reason as above, as she has not established that this "change in job responsibilities" was materially adverse in some way. *Griffin*, 356 F.3d at 829. These instances fail to qualify as adverse actions.

19

Drawing all reasonable inferences in Hirsch's favor, *see generally* [Dkt. No. 42 at ¶ 43], and putting aside Hirsch's apparent concession that she was not qualified for an "Associate Director" position until August of 2018,[12] the Court concludes that Hirsch sufficiently established that she was qualified, applied for, and rejected from four roles: (1) "BFS Consulting Recruiting Lead Associate Director" in August of 2014, (2) "EAS Recruiting Lead Associate Director" in October of 2015, (3) "Digital Operations Consulting Recruiting Lead Associate Director" in June of 2017, and (4) "Recruiting Diversity & Inclusion Center of Excellence Lead Director" in June of 2017. These four allegations of failure-to-promote amount to an adverse employment action.

### 3. Comparators, Legitimate Non-Discriminatory Reasons, and Pretext

The next task is to perform a comparator analysis, where the Court considers whether Cognizant "granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." *Grayson*, 317 F.3d at 748. For another employee to be similarly situated to the plaintiff, there must be "enough common features [between the plaintiff and the comparator] to allow a meaningful comparison in order to divine whether intentional discrimination was at play." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012). While Hirsch's chosen comparators need not be her "doppelganger," *Filar v. Bd. of Educ. of City of Chicago*,

---

[12] Cognizant notes in passing that Hirsch was ineligible for a promotion to an Associate Director position until the 2018 promotion cycle at the earliest based on its two-year tenure requirement. [Dkt. No. 35 at n.6; Dkt. No. 42 at ¶ 36]. Hirsch does not dispute this. [*Id.*] Because Cognizant does not meaningfully press this argument, neither does the Court.

526 F.3d 1054, 1061 (7th Cir. 2008), they must be "directly comparable to her in all material respects," *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). Relevant factors to consider include whether the comparators "held the same job description," "were subject to the same standards," "were subordinate to the same supervisor," "had comparable experience, education, and other qualifications," *David*, 846 F.3d at 226, and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them," *Coleman*, 667 F.3d at 847. For the reasons below, the Court concludes that Hirsch's proposed comparators—Adam Udell, Eric Skoien and Sonya McLaughlin—are insufficient.

Hirsch argues that Udell is an apt comparator for the role of BFS Consulting Recruiting Lead Associate Director that Hirsch applied for in August of 2014. [Dkt. No. 41 at 9.] Udell was hired in 2014 externally, rather than from within Cognizant. As a result, the Court cannot compare whether he held the same job description, was subject to the same standards, or was subordinate to the same supervisor. *David*, 846 F.3d at 226. Rather, the Court's analysis is based on his "comparable experience, education, and other qualifications." *Id.*

Hirsch argues that Udell, having fewer years of experience, was less qualified for the role. [Dkt. No. 41 at 9.] Hirsch cites to Maury's deposition testimony, where he states that he was unsure how many years of experience Udell had but he would approximate that it was "15+" years of total experience, which is less than Hirsch's total years of experience. [*Id.*] Setting aside the ambiguity in Maury's testimony,

Hirsch fails to effectively elucidate anything at all about Udell's "qualifications or employment history." *Skiba*, 884 F.3d at 723. For example, it is unclear whether Udell's total years of experience are in the workforce writ large, recruiting work more generally, or are specific to the area of Banking and Financial Services. *Id.* (holding that the plaintiff, in his *prima facie* case, must provide enough "amplifying detail of the employees' qualifications or employment history that would allow [the] Court to comfortably conclude their hiring was the result of discriminatory motive rather than some other explanatory variable"). The Court cannot even conclude how many years specifically Udell had at the time he was hired, given that Maury alleged that he had approximately "15+" years of total experience. [Dkt. No. 41 at 9.] The Court is thus left to speculate as to whether age or some other legitimate consideration caused Cognizant to choose Udell over Hirsch. As such, Hirsch has not met her *prima facie* burden to provide a suitable comparator. *Grayson*, 317 F.3d at 748.

Even if Udell was an apt comparator, Cognizant provided a legitimate, non-discriminatory reason for hiring him over Hirsch: in August of 2014, Hirsch was an independent contractor, [Dkt. No. 42 at ¶ 4], not a full-time Cognizant employee. [Dkt. No. 44 at 8.]

Hirsch says that Skoien is an appropriate comparator for two roles: EAS Recruiting Lead and Digital Operations Consulting Recruiting Lead. [Dkt. No. 41 at 9–10.] Much like Hirsch's analysis of Udell, her argument boils down to the fact that Hirsch had more total years of experience as compared to Skoien. [*Id.*] As with Udell, this statement is simply too broad for the Court to meaningfully assess whether

Skoien is a comparator. Hirsch fails to provide any information about Skoien's qualifications or employment history, such as the nature of his total years of work experience. She likewise fails to demonstrate that Skoien had the same supervisor or a comparable disciplinary history as her. *David*, 846 F.3d at 226; *Coleman*, 667 F.3d at 847. This falls far short of Hirsch's *prima facie* burden to show that Skoien is "directly comparable to her in all material respects." *Burks*, 464 F.3d at 751.

Even if Hirsch had proven that Skoien was an apt comparator, Cognizant has put forward a legitimate, non-discriminatory reason for giving Skoien the two roles: he had more applicable work experience for each. [Dkt. No. 44 at 8.]

Finally, Hirsch has waived any argument that Cognizant failed to promote her to the position of Recruiting Diversity & Inclusion Center of Excellence Lead Director. Hirsch does not address the fact that Sonya McLaughlin took that role in June of 2017. [Dkt. No. 41 at 8–10.] Even if Hirsch had argued that Sonya McLaughlin was a sufficient comparator, McLaughlin was between fifty-five and sixty years old at the time she took on this role while Hirsch was approximately sixty-three years old. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997) (to satisfy the "substantially younger" requirement for sufficient comparators for age discrimination claims, the comparator must be at least ten years younger than the plaintiff).

Even if Hirsch was successful in putting forward these individuals as sufficient comparators, she would be unable to establish pretext. *McDonnell Douglas*, 411 U.S. at 802; *Carson*, 865 F.3d at 533. Hirsch does not put forward applicable record evidence to enable the Court to infer that Cognizant's stated reasons were "unworthy

of credence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022) (internal quotation marks omitted)). In this way, the Court does not evaluate whether the proffered justification "was accurate or even whether it was unfair," instead the "sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Id.* (citing *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020)).

Hirsch's proffered reasoning is much the same as her comparator analysis: she cites her total amount of experience in recruiting as compared to her co-workers and concludes that the only inference possible is age discrimination. [Dkt. No. 41 at 13.] But "[g]uessing at an employer's hidden animus or inner prejudice [ ] is not enough to defeat summary judgment. The employee must support her hunch with evidence." *Brooks*, 39 F.4th at 435. To the extent Hirsch responds with her "own opinions about her qualifications," *Robertson*, 949 F.3d at 381, this simply does not give rise to a genuine issue of material fact regarding whether Cognizant's legitimate, non-discriminatory reasons were "false[].' *Brooks*, 39 F.4th at 435 (noting that if an employer "honestly believed its reasons for taking the challenged actions, even if those reasons were incorrect, then the reasons were not pretextual").

As such, Hirsch has failed to meet her *prima facie* burden for her discrimination claim. Considering the evidence as a whole, including Hirsch's allegations of pay disparity and workplace harassment more generally, no reasonable

jury could find that Hirsch's age was the but-for reason that she was not promoted. *Ortiz*, 834 F.3d at 765. Accordingly, the Court grants Cognizant's motion for summary judgment on Hirsch's age discrimination claim.

### B.    Age Retaliation under IHRA

The Court next considers Hirsch's age-based retaliation claim under the IHRA. The IHRA prohibits retaliation "against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination." 775 ILCS 5/6-101(A); *see also Marski v. Courier Express One, Inc.*, 2021 WL 4459512, at *10 (N.D. Ill. Sept. 29, 2021) (applying identical standard for IHRA, ADEA, and Title VII retaliation claims). Retaliation can be established under the direct or indirect method of proof. *Coleman*, 667 F.3d at 859. Hirsch only argues her claims under the direct method of proof. *See Hutt v. AbbVie Prod. LLC*, 757 F.3d 687, 694 (7th Cir. 2014) (holding that plaintiff's choice to proceed exclusively under the direct method deemed any arguments under the indirect method waived). Under the direct method, Hirsch must show that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Castro*, 816 F.3d at 918. Once Hirsch establishes a *prima facie* case, the burden shifts back to Cognizant to articulate a legitimate, non-retaliatory reason for its action. *Id.* If Cognizant can state such a reason, Hirsch must then present evidence of a pretext. *Id.*

### 1. Statutorily Protected Activity

Hirsch alleges three sources of statutorily protected activity: (1) her complaints to her supervisor of age discrimination; (2) her EEOC complaint in August of 2019; and (3) her present lawsuit, filed in November of 2020. [Dkt. No. 41 at 14.] As to her on-the-job complaints, these can constitute statutorily protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (observing that "filing an official complaint with an employer may constitute statutorily protected activity"). But Hirsch fails to develop any arguments to support this contention beyond a single reference in her brief that "she complained of age discrimination multiple times" during her time at Cognizant. [Dkt. No. 41 at 14.].[13]

Regarding the remaining bases, the parties do not dispute, and the Court agrees, that Hirsch's 2019 EEOC complaint and her 2020 lawsuit constitute statutorily protected activity. *See McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022) (noting that an EEOC complaint "*about the alleged discrimination* is the most obvious form of statutorily protected activity" (emphasis in original)); *see also Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009) (holding that a plaintiff's lawsuit about the purported discrimination was statutorily protected activity). [Dkt. No. 35 at 12–14; Dkt. No. 41 at 14.]

---

[13] Even if Hirsch had developed her argument that these complaints amounted to statutorily protected activity, given their apparent lack of connection with age discrimination or retaliation, neither would likely qualify. *See Tomanovich*, 457 F.3d at 663 (noting that statutorily protected activity must be connected to the protected status at issue, rather than merely complaining in general terms of harassment or discrimination).

### 2.    Adverse Employment Action

The Court next considers whether Hirsch sufficiently alleged an adverse employment action. To rise to the level of an adverse action, an employer's action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007). "[P]etty slights, minor annoyances, and bad manners" do not rise to the level of adverse employment action. *Castro*, 816 F.3d at 918. An employee must suffer something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 918–19.

Hirsch alleges that a variety of Cognizant's actions amounted to adverse actions: her reassignment to an inferior supervisor, Matthew Richards, in September 2020; her placement in a new and less desirable work assignment; the removal of certain responsibilities while being denied the necessary resources to complete her work; and her negative performance review, resulting in a PIP and decreased discretionary bonus. [Dkt. No. 41 at 14–15.] The Court concludes that only the last allegation survives.

Hirsch argues that her reassignment in September of 2020 to a new direct supervisor, Richards, was materially adverse because Richards was a "problem director" or *"persona non grata"* [Dkt. No. 41 at 14; Dkt. No. 45 at ¶ 20.] But Hirsch's characterization of Richards among employees is simply unsupported by the record. [Dkt. No. 45 at ¶ 20.] As Cognizant points out, Hirsch cites to a single employee complaint about Richards in 2019. [*Id.*] While the Court must view the facts in the

light most favorable to Hirsch, this record evidence is plainly insufficient to prove that Richards made "*Hirsch's* work environment unbearable." [*Id.* (emphasis added)]. While Hirsch may have had personal differences with Richards, this does not render her assignment to him materially adverse. *See Castro*, 816 F.3d at 918–19; *see also Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (noting that a change of supervisors is not ordinarily sufficiently materially adverse to constitute an adverse employment action in a retaliation claim).

Hirsch next argues that the reassignment forced her to work in "areas [where] she had less experience." [Dkt. No. 41 at 14.] Hirsch essentially contends that she was forced into a new work assignment and would have preferred to remain where she thought she worked better. [*Id.*] This is not materially adverse. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 456 (7th Cir. 2011) ("Receiving a challenging work assignment typically is not sufficiently adverse to amount to a retaliatory adverse employment action."); *see also Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) (noting that "subjective preference for [another] job is not sufficient to show an adverse employment action").

Even if the reassignment to Richards was an adverse employment action, the timing of that reassignment is simply too remote. Hirsch filed her EEOC complaint in August 2019 and she began reporting to Richards in September 2020 when she returned to Cognizant following a three-month furlough. [Dkt. No. 1; Dkt. No. 45 at ¶ 19.]. This is simply too long a period to allow a reasonable factfinder to infer that

28

the EEOC complaint was causally linked to the reassignment.[14] *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003), *overruled for other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) (holding a plaintiff who was not terminated until a year after she informed a superior of her complaint was "far too long" to allow a reasonable fact-finder to infer that the adverse action was causally related to filing a complaint.). This argument fails.

Hirsch argues that she suffered an adverse employment action when Cognizant took away certain responsibilities from her and failed to provide her the necessary resources to complete her work. [Dkt. No. 41 at 14–15.] An employee can suffer an adverse employment action "where the employee's job is changed in a way that injures [her] career." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). To support her contention, Hirsch relies on her own deposition testimony that Richards and Mitra "powwowed" to remove Hirsch's responsibilities, "[take] away [her] candidates" and "portfolio of positions," and "called candidates and told them not to talk" to Hirsch. [Dkt. No. 43-1 at 107.] This contention is unsupported by the record. Hirsch does not point to any applicable record evidence showing that she or anyone else had personal knowledge of this "powwow" or joint decision by Mitra and Richards to retaliate against her by taking away her responsibilities and resources. The argument amounts to pure speculation. [*Id.*]; *see McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (holding that the Court is "not required to draw every

---

[14] Hirsch's negative performance review, placement on a PIP, decreased discretionary bonus, and changed work responsibilities occurred in March of 2021, and thus are even more remote from her August 2019 EEOC complaint. [Dkt. No. 45 at ¶¶ 21–22.]

conceivable inference from the record and mere speculation or conjecture will not defeat a summary judgment motion" (cleaned up)).

Finally, Hirsch argues that her negative performance review, placement on a PIP, and decreased discretionary bonus were all adverse employment actions. [Dkt. No. 41 at 14–15.] Separately, each of these actions alone likely do not qualify as materially adverse sufficient to rise to the level of adverse employment action. *See Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (holding that negative performance reviews and PIPs alone are not materially adverse sufficient to qualify as adverse employment actions); *see also Farrell v. Butler Univ.*, 421 F.3d 609, 614 (7th Cir. 2005) (noting that while "denial of a raise qualifies as an adverse employment action . . . the denial of a bonus does not" (internal citation omitted)). However, a "sequence of protected activity and punitive action *could* lend some support to a reasonable juror's inference of retaliation." *Coleman*, 667 F.3d at 861 (emphasis added); *see also Bagwe v. Sedgwick Claims Mgmt. Serv., Inc.*, 811 F.3d 866, 888–89 (7th Cir. 2016) (analyzing whether plaintiff's PIP had "materially adverse consequences," causing plaintiff to receive a negative performance review which thereafter precluded her from receiving a raise).

Here, Hirsch alleges that as a result of Richards's negative performance review, she was placed on a PIP and received a decreased discretionary bonus. [Dkt. No. 41 at 14]. Hirsch cites to Maury's deposition testimony, where he states that when an employee receives a negative performance review, it is "tied directly to [their] annual bonus payout" and the employee "could be put on an improvement plan." [Dkt.

No. 45 at ¶ 24; Dkt. No. 43-1 at 41–42, 47.] Maury testified that Hirsch did not receive a raise in part due to her poor performance review. [Dkt. No. 43-1 at 46–47.] Drawing all reasonable inferences from the evidence in Hirsch's favor, the Court concludes that it can be reasonably inferred that Hirsch was paid a reduced discretionary bonus and placed on a PIP due to her negative performance review. *Skiba*, 884 F.3d at 717. As such, Hirsch has sufficiently alleged an adverse employment action.

### 3. Causation

Although Hirsch has successfully alleged an adverse employment action, Hirsch fails to meet the causation prong of her *prima facie* burden. *Castro*, 816 F.3d at 918. Hirsch argues that Mitra and Richards retaliated against her by giving her a negative performance review because she filed this lawsuit against Cognizant on November 2, 2020. [Dkt. No. 41 at 14–15.] Hirsch's argument suffers various pitfalls.

First, Hirsch does not establish that Cognizant, specifically Mitra or Richards, were aware of her statutorily protected activity—the filing of her lawsuit on November 2, 2020. *See Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019) ("As a threshold matter, the plaintiff must show that the defendant was aware of the protected conduct."). Hirsch testified that she told Mitra about her EEOC charge and her on-the-job complaints but does further cite any record evidence that Mitra or Richards knew about her lawsuit at the time that she received her negative performance review in February of 2021. [Dkt. No. 45 at ¶¶ 18, 22.]

Beyond that, Hirsch's argument boils down to suspicious timing. The Seventh Circuit has repeatedly emphasized that "mere temporal proximity is not enough to

31

establish a genuine issue of material fact." *Silverman v. Bd. Of Educ. of City of Chi.*, 637 F.3d 729, 736 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). While "the timing of events is often an important evidentiary ally of the plaintiff," the Seventh Circuit has "cautioned that suspicious timing may be just that—suspicious." *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (cleaned up). That is exactly what Hirsch's case presents. Hirsch explicitly argues that after "she filed her Complaint . . . Cognizant took responsibilities away from Hirsch, decreased her performance rating which resulted in a reduced bonus, and gave Hirsch roles for which she had no background." [Dkt. No. 41 at 14.] Without more, this is insufficient.

Even if timing alone were sufficient, Hirsch received a negative performance review in February of 2021. [Dkt. No. 1; Dkt. No. 43-1 at 111; Dkt. No. 45 at ¶ 22.] This three-month gap is simply too remote from the filing of her lawsuit in November of 2020 to establish a causal connection sufficient to meet her burden. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (noting that while there may be an exception to the general rule that "[e]vidence of temporal proximity . . . is insufficient to establish a causal connection for a claim of retaliation," such an exception "would be limited to matters occurring within days, or at most, weeks of each other").

Even if she could establish causation, Cognizant presented a legitimate, non-retaliatory reason for Hirsch's negative performance review: she had recently received multiple customer complaints. [Dkt. No. 42 at ¶¶ 20–22.] Indeed, it is

doubtful that Hirsch can demonstrate any pretext, given these complaints. *See Brooks*, 39 F.4th at 435. Accordingly, the Court need go no further.

As a whole, no reasonable jury could find that Cognizant retaliated against Hirsch for reporting unlawful discrimination. *Ortiz*, 834 F.3d at 765. Accordingly, the Court grants the motion for summary judgment on Hirsch's age retaliation claim.

## IV. Conclusion

Cognizant's motion for summary judgment is granted. A final judgment consistent with Federal Rule of Civil Procedure 58 will enter in favor of Defendants and against Plaintiff. Civil case terminated.

Enter: 21-cv-161

Date: May 9, 2023

_____
Lindsay C. Jenkins
United States District Judge

33